IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN LYNN BLAKE              :
                              :
    v.                        :   Civil Action No. DKC 15-2122
                                  Criminal No. DKC 10-0729
                              :
UNITED STATES OF AMERICA      :
                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are the motions to vacate sentence pursuant to 28 U.S.C. § 2255 and to compel filed by Petitioner Kevin Lynn Blake ("Petitioner"). (ECF Nos. 30, 43).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to vacate will be denied and the motion to compel will be dismissed.

**I.  Background**

Petitioner entered into an agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (a "C-Plea") on March 9, 2011. Petitioner pled guilty to a violation of 18 U.S.C. § 922(g)(1). The parties stipulated that: Petitioner had at least one prior conviction for a crime of violence under the United States Sentencing Guidelines (the

---

[1] The motion to compel is filed *pro se*. The motion to vacate was initially filed *pro se* but has been supplemented by counsel.

"Guidelines") § 2K2.1(a)(4)(A) and thus his base offense level was at least 20,[2] and Petitioner's criminal history category was at least a IV.  The Government stipulated that it would not oppose a 2-level reduction for acceptance of responsibility and would move for an additional 1-level reduction for timely notification of an intention to plead guilty.

With regard to the guideline calculation, the parties included the following paragraph 6.b:

> If the Defendant committed part of the instant offense after sustaining two felony convictions of crimes of violence, base offense level would increase to 24.  *See* U.S.S.G. § 2K2.1(a)(2).  If the defendant committed this offense after having three previous convictions for a violent felony or a serious drug offense on occasions different from one another, the base offense level increases to 33, with a criminal history category of no less than IV, with a 15-year mandatory minimum sentence under 18 U.S.C. § 924(e).  U.S.S.G. § 4B1.4(a)-(c).  The Defendant does not agree that he committed this offense after sustaining more than one crime of violence or violent felony, but stipulates to the sentence set forth in paragraph 8.  With respect to § 924(e), this Office stipulates for purposes of this agreement that at this time it does not possess sufficient documentation to establish three prior predicate convictions under the standards set forth in *Shepard v. United States*, 544 U.S. 13 (2005).

---

[2] The prior conviction which the parties agreed was a crime of violence was a Maryland robbery conviction.  (ECF No. 18-1).

Petitioner and the Government agreed that the appropriate disposition of the case was a sentence of 120 months. (ECF No. 18, ¶ 8). The presentence report recommended finding that the base offense level should be 24, based on two prior felony convictions for crimes of violence, robbery and resisting arrest. Petitioner's criminal history consisted of many convictions, including quite a number of 1 point priors, and reached 19 criminal history points, or Criminal History Category VI. (Even without the now vacated resisting arrest conviction, he still has 19 criminal history points.) The plea agreement was accepted on June 14, 2011. (ECF No. 28). The court adopted the parties' agreement and sentenced Mr. Blake to 120 months. In the Statement of Reasons accompanying the judgment, the court wrote: "The parties agreed pursuant to Fed.R.Crim.P. 11(c)(1)(C) to a sentence of 120 months. The government pointed out that the defendant's 19 criminal history points are well above the typical category VI offender and he narrowly avoids a mandatory 15 year sentence. The defendant acknowledged his poor criminal history as well." (ECF No. 29 at 3.)

On January 20, 2015, Petitioner moved for relief.[3] (ECF No. 30). On December 20, 2016, Petitioner through counsel filed a

---

[3] He initially claimed relief pursuant to 28 U.S.C. § 2241 and filed his motion in the United States District Court for the Northern District of West Virginia. The motion was transferred to this court and construed as a motion pursuant to 28 U.S.C. § 2255. (ECF No. 30-1).

3

supplemental motion to vacate arguing, in part, that because one of Petitioner's prior convictions, for resisting arrest, had been vacated, Petitioner's Guideline range had changed and he was entitled to have his sentence vacated and to be re-sentenced. (ECF No. 36).[4] The Government responded, arguing that the motion to vacate was untimely, that the claim was procedurally defaulted, and that, regardless, the claim was not cognizable because Petitioner was sentenced pursuant to a C-Plea and not the Guidelines. (ECF No. 38). Petitioner replied. (ECF No. 40). Petitioner moving *pro se* also filed a motion to compel a decision from the court. (ECF No. 43).

**II. Timeliness**

Petitioner filed his initial motion years after his guilty plea, and the Government argues it is untimely. (ECF No. 38, at 4-5). Petitioner claims timeliness pursuant to 28 U.S.C. § 2255(f)(4), by arguing that the vacatur of the prior state court conviction was a newly discovered fact and that Petitioner had a year from that date to file a habeas petition. (ECF No. 40, at 10).

28 U.S.C. § 2255(f)(4) provides that a habeas petition is timely if filed within one year of "the date on which the facts supporting the claim or claims presented could have been

---

[4] An earlier supplemental petition (ECF No. 33), was later withdrawn. (ECF No. 42).

discovered through the exercise of due diligence." A state court order vacating a sentence is a "fact" which can toll the statute of limitation. *Johnson v. United States*, 544 U.S. 295, 302 (2005). A petitioner is not automatically entitled to tolling of the statute of limitations based on the vacating of a prior state court conviction. Rather, a petitioner is only entitled to tolling based on a subsequently vacated sentence if, after the date the district court entered judgment, he acted "diligently to obtain the state-court order vacating his predicate conviction." *Id.* at 310.

The Government argues that Petitioner did not act diligently because he failed to file the *coram nobis* petition in the state court "until more than *five years* after entry of judgment in the federal case[.]" (ECF No. 38, at 5-6 (emphasis in original)). Petitioner's response is complicated. He argues that *Holmes v. State*, 401 Md. 429 (2007), initially precluded him from seeking *coram nobis* relief because he had not filed an application for leave to appeal his guilty plea timely. He next argues that although the *Holmes* decision, and thus the restriction on applying for *coram nobis*, was overturned by statute in 2012, this restriction "did not conclusively disappear until July 2015" when the Court of Appeals of Maryland held, in *State v. Smith*, 443 Md. 572 (2015), that the new law "retroactively applies." (ECF No. 40, at 17). Petitioner

5

concludes that because he filed for *coram nobis* relief within a year of *Smith*, his petition is timely. Petitioner's argument mischaracterizes *Holmes*, fabricates a new legal standard, and, otherwise, misses the point.

According to Petitioner, *Holmes* "held that a defendant, like [Petitioner], who did not file a leave for application to appeal the validity of his guilty plea within 30 days of the entry of the plea, waived his right to file a *coram nobis* petition." (ECF No. 40, at 17). In *Holmes*, the Court of Appeals stated, "We hold that if an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a *rebuttable presumption* arises that he has waived the right to challenge his conviction in a subsequent *coram nobis* proceeding." 401 Md. at 445-46 (emphasis added). This presumption can be rebutted by showing that a petitioner was not informed of his rights to challenge a conviction or through "special circumstances." *Id.* at 475. Petitioner has not alleged that this bar ever applied to him, and, therefore, this case may not be relevant.

Petitioner's argument also assumes that a procedural barrier must "conclusively disappear" before a petitioner could be expected to file for relief. (ECF No. 40, at 17). Petitioner cites no support for the use of this phrase, and such

6

a standard would fly in the face of the command that a petitioner use "reasonable diligence in the circumstances." *Gray v. Ballard*, 848 F.3d 318, 322 (4th Cir. 2017) (internal quotation marks omitted). It would seem reasonable diligence would require a petitioner to raise an argument once there is a legitimate basis and not wait for an issue to be conclusively decided.

Even assuming that *Holmes* barred Petitioner's *coram nobis* petition and a procedural bar had to "conclusively disappear," the bar conclusively disappeared on October 1, 2012 when Section 8-401 of the Maryland Criminal Procedure Article went into effect. It states, "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error *coram nobis*." Section 8-401 was "an apparent reaction to *Holmes*." *Graves v. State*, 215 Md.App. 339, 350 (2013). The legislative history includes a letter stating "that the 'pernicious decision' in *Holmes* 'must be undone'" and providing language for that purpose "very similar to the language contained in CP § 8-401." *Id.* at 350 n.7. The legislature spoke clearly and precisely and removed the alleged procedural bar. If Petitioner needed more proof, the Court of Special Appeals of Maryland held that § 8-401 applied retroactively in 2013. *Graves*, 215 Md.App. at 352 (2013); *see also Coleman v. State*, 219 Md.App. 339, 349-50 (2014). If a

7

procedural bar ever existed, it was removed well before Petitioner moved for *coram nobis* relief.

Moreover, this argument does not address the actual question of whether Petitioner was diligent from the *date of judgment* such that the statute of limitations should be tolled. *Johnson*, 544 U.S. at 302. Petitioner waited five years from judgment, four years from the legislative change in the law, three years from the intermediate appellate court interpretation of the law, and a year from affirmance by the Maryland Court of Appeals. In the interim, Petitioner took no steps to obtain relief. Petitioner sat on his rights rather than assert them. Accordingly, the discovery rule does not toll the statute of limitations for his habeas petition, and his habeas petition is untimely.

**III. Cognizable under 28 U.S.C. § 2255**

Moreover, in this somewhat atypical case, the current claim is not cognizable. Pursuant to 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, [2] or that the court was without jurisdiction to impose such sentence, [3] or that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

8

To be cognizable, a petition must be based on one of the four specified grounds in § 2255(a). Petitioner does not challenge the constitutionality of the guilty plea. He does not argue that his sentence was *imposed* in violation of any statute. Petitioner does not argue that the court lacked jurisdiction to impose the sentence or that the sentence was in excess of the statutory maximum. Thus, for relief to be available, Petitioner needs to show that his sentence is "otherwise subject to collateral attack."

A sentence is "otherwise subject to collateral attack" when an error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal citation and quotation omitted). "This standard is only satisfied when a court is presented with 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Petitioner has not met this demanding standard. Petitioner was arrested in possession of a stolen weapon after having previously been convicted of a felony with a term of imprisonment greater than a year. Petitioner was arrested while "soliciting cash from customers purchasing gasoline in exchange

9

for [Petitioner] charging the purchase on a credit card (which did not belong to him)." (ECF No. 18-1). The credit card along with two other credit cards and a driver's license found on Petitioner during a search incident to arrest belonged to a Mr. Charles Walter Burton. Mr. Burton "was killed in a hit-and-run . . . just hours earlier, and had no identification on him when police arrived." (ECF No. 1, at 3). When arrested, Petitioner was also in possession of marijuana. (*Id.*).

At the time of the plea agreement, the Government had sufficient proof to establish one predicate under the Armed Career Criminal Act ("ACCA"), but lacked sufficient documentation to establish three ACCA predicates. (ECF No. 18 ¶ 6.b.). It was unclear whether documentation existed to establish three ACCA predicates. If the Government could establish three ACCA predicates, Petitioner would face a mandatory minimum of fifteen years. Even if the Government did not establish additional prior convictions, the Guidelines range, without a three-point reduction for acceptance of responsibility, could have been 100-125 months. Under those circumstances, Petitioner chose not to risk that the Government would find additional documentation and conviction at a trial which likely would not reduce his sentence. Instead, he accepted the C-Plea.

As part of the C-Plea, Petitioner agreed that "[b]ased on all of the factors set forth in 18 U.S.C. § 3553(a), including . . . the nature and circumstances of [his] criminal history and the need to protect the public from further crimes . . . a sentence of 120 months incarceration [was] the appropriate disposition of this case." (ECF No. 18 ¶ 8). The actual guideline determinations were left uncertain in the plea agreement, and thus were not material in the parties' agreement on the sentence. Petitioner only stipulated to one prior crime of violence, the robbery, and a base offense level of 20, in agreeing that 120 months was the appropriate sentence. As it turned out, the presentence report recommended finding that there were two prior crimes of violence, resulting in a base offense level of 24, and Petitioner did not challenge that guideline determination at sentencing. The sentence of 120 months was twenty-four months in excess of the then applicable Guidelines range established by the presentence report and adopted by the court, and it represented the maximum term of imprisonment for the offense of conviction. *See* 18 U.S.C. § 924(a)(2). The Court accepted the sentence because of the seriousness of Petitioner's conduct and his fifteen year history of criminal activity. (ECF No. 29).

Now, based on the absence of the since-vacated resisting arrest conviction, Petitioner posits that his guideline range

would be lower, *i.e.*, no higher than 51 to 63 months, that his C plea to 120 months was affected by the higher guideline range, and that he is entitled to be resentenced. In reality, Petitioner wants to use a § 2255 motion to take advantage of an improvement in his bargaining position vis-á-vis the Government, but a change in bargaining position is a far cry from "a complete miscarriage of justice." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999).

Petitioner cites to the decisions of the United States Court of Appeals for the First Circuit in *Cuevas v. United States*, 778 F.3d 267, 274 (1st Cir. 2015), and the United States Court of Appeals for the Fourth Circuit in *United States v. Dorsey*, 611 F.App'x 767 (4th Cir. 2015), for the proposition that a sentence based on a Guidelines range enhanced by a subsequently vacated conviction is a miscarriage of justice. (ECF No. 40, at 3) ("*Dorsey* and *Cuevas* compel the conclusion that [Petitioner]'s claim for § 2255 relief based on the vacatur of his resisting arrest conviction is cognizable."). Whether or not the proposition is valid, it is not relevant here.

In both *Cuevas* and *Dorsey*, the petitioners received within Guidelines range sentences without a C-Plea, and neither sentence was the statutory maximum. In such cases, the Guidelines are the "lodestone of sentencing." *Cuevas*, 778 F.3d at 275 (quoting *Peugh v. United States*, 569 U.S. 530, 544

(2013)). When a court errs in its use of its most important tool, then an error in the process can occur which can undermine the fairness and integrity of the court's conclusion. *See Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1910 (2018) (concluding that a court abused its discretion in determining that a miscalculated Guidelines range did not affect the fairness of judicial proceedings).

Petitioner, however, was not sentenced within the Guidelines range. He was sentenced to the statutory maximum for the offense of conviction, well above the guidelines range. His sentence explicitly was imposed in light of the factors set out in 18 U.S.C. § 3553(a) and not due to the Guidelines. (ECF Nos. 18, 29). Even though "in the *usual* case the court's acceptance of a [C-Plea] and the sentence to be imposed pursuant to that agreement are 'based on' the defendant's Guidelines range," *Hughes v. United States*, 138 S.Ct. 1765, 1776 (2018) (emphasis added), in this case, Petitioner's sentence was based on other factors pursuant to statute and not the Guidelines. Thus, a now-vacated conviction that went to a Guidelines calculation which was not the basis for the sentence and was not even clearly relevant to the parties' bargaining positions does not fall inside "the *narrow scope* of the fundamental miscarriage of

13

justice exception." *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992) (emphasis added).[5]

**IV. Conclusion**

For the foregoing reasons, the motion to vacate sentence filed by Petitioner Kevin Blake will be denied and the motion to compel filed by Petitioner will be dismissed.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not

---

[5] Because the petition will be denied, the Government's argument as to procedural default does not need to be addressed, and the motion to compel is now moot and will be dismissed.

14

issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal quotation marks omitted).

Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability. A separate order will follow.

                                                      /s/
                                DEBORAH K. CHASANOW
                                United States District Judge